

THE ALEPH INSTITUTE

NATIONAL HEADQUARTERS
9540 Collins Avenue, Surfside, FL 33154
Phone: (305) 864-5553

WEST COAST BRANCH
4221 Wilshire Blvd, #170-6
Los Angeles, CA 90010
Phone: (424) 210-3685
www.aleph-institute.org

**Rabbi Yossi Bryski**
ybryski@aleph-institute.org

**Chairperson / Founder**
Rabbi Sholom D. Lipskar
**President**
Lloyd S. Rubin
**Board of Directors**
Robert Danial
Boruch Duchman
Joy Fishman
Stephen Fiske
Russel Galbut
Reuven Herssein
Daniel M. Holtz
Alberto Kamhazi
Sonny Kahn
Rabbi Aaron Lipskar
Rabbi Sholom D. Lipskar
Morris Mendal
Lloyd S. Rubin
Eric Stein
Sylvia Urlich
**Executive Director**
Rabbi Aaron Lipskar
**Director of Operations**
Moshe N. Barouk
**Director of Outreach Programs**
Rabbi Menachem M. Katz
**Director of Military Programs**
Rabbi Sanford L. Dresin
**Director of Advocacy**
Rabbi Zvi Boyarsky
**Director of Outreach Programs**
Rabbi Shua Brook
**Chief Financial Officer**
Yosie Lipskar

January 12, 2024

The Honorable Claude M. Hilton
Senior United States District Judge
Eastern District of Virginia
Albert V. Bryan U.S. Courthouse
401 Courthouse Square
Alexandria, Virginia 22314

Re:     ***United States v. Shai Cohen***
        Case No. 1:16CR00114-001

Dear Judge Hilton:

I write on behalf of the Aleph Institute ("Aleph"), with respect and deference to the Court, regarding the sentencing of Shai Cohen ("Shai"). ***We respectfully recommend that the Court consider a sentence for Shai consisting of time served.*** We are hopeful that you will find that our presentation effectively addresses compelling circumstances specific to this case, and we are available to provide any additional input that may assist you in your sentencing decision. We are grateful for your consideration of this submission.

## THE ALEPH INSTITUTE

The Aleph Institute ("Aleph") was formed in 1981 at the direction of The Lubavitcher Rebbe, Rabbi Menachem M. Schneerson, *may his merit shield us,* to provide support and rehabilitation to individuals enmeshed in the criminal justice and penal systems.[1] Aleph became a reality during a meeting between Rabbi Sholom D. Lipskar and the

---

[1] www.aleph-institute.org; *see, also*, Appendix: The Aleph Institute (attached hereto as Exhibit A).

THE ALEPH INSTITUTE

Honorable late Jack Weinstein of the U.S. District Court for the Eastern District of New York. Judge Weinstein wrote the following about Aleph: *"[T]he Aleph Institute, and [its] associates understand and force us to face the fact that each person deserves to be treated with respect as an individual personality and not as . . . a faceless number."*[2] Judge Weinstein continued, "[Aleph's] assistance to defendants and their families provide standards of compassion and aid worthy of emulation . . . As a result of its good work, Aleph is widely known and respected by penal and judicial authorities." *We provide our services on a pro bono basis, motivated only by our sincere belief in the work that we do.*

## **SHAI COHEN**

Introduction

Shai Cohen ("Shai") is 39-years-old. He was born in Haifa, Israel, and grew up in Israel. Shai's father (Yosef), age 73, lives in Haifa, as does his mother (Shoshana), age 76. His parents are divorced. Shai's sister, Shiri, and his paternal half-sister, Ilanit, both reside in Israel. Shai served in the Israeli Army for three years. In 2013, Shai married Shiran in Israel, and together they have three young children: Yali (age 9), Lavi (age 7), and Elali (age 1).

Shai's wife and children live in northern Israel, an area currently in turmoil due to the ongoing and escalating conflict in the region. The safety of Shai's wife and young children is currently in jeopardy, as they remain in harm's way in Israel's northern conflict zone. They desperately need Shai to return home, so he can relocate them to a safer location and provide ongoing support and protection. Allowing Shai to return to Israel to be with his family as soon as possible would allow him to do all that he needs in order to ensure that his wife and children are safe.

Shai and his family have already suffered enormously as a result of his unlawful conduct – including his arrest in Israel in May 2021, followed by more than two years of home confinement, his extradition to the United States in August 2023, and his incarceration in the United Stated since then. This suffering has been exacerbated by the fear, anxiety, and uncertainty caused by the ongoing conflicts in Israel. Separated by 6,000 miles, Shai is tortured by constant worry and guilt, unsure whether his family is safe, and powerless to provide the security, protection, and support that they need now more than ever.

---

[2] Hon. Jack B. Weinstein, Prison Need Not Be Mandatory: There Are Options Under the New U.S. Sentencing Guidelines, 1 JUDGE J. 16, 28 (1989).

B"H

THE ALEPH INSTITUTE

<u>Shai is a Loving and Supportive Son, Husband, and Father</u>

People who are close with Shai and who know him well describe his devotion and commitment to his family. Starting at a young age, Shai supported his mother, Shoshana, as she struggled following her separation from Shai's father, Yosef. Adi Levy, Shai's friend since childhood, writes that "from the time [Shai] was a kid he always supported his family in so many ways, mostly his loving mother which was a single [hard working] mother. He always helped his mom financially and physically."[3] According to Adi, "family for [Shai] is first place." Shai's sister, Shiri Lavi, describes how, following their parents' divorce, their mother sank into a deep depression. At the time, Shiri was away serving in the Israeli Army and could not care for her mother. She describes how, overnight, Shai "turned from a boy to a man at home, took care of my mother and became her whole world, her listening ear, and her best friend."

In 2013, when Shai married Shiran, the same nurturing traits that characterized Shai's young adulthood were extended and magnified in the way he cared for his own family. Shai's wife, Shiran, writes that "Shai is loving, patient, and actively engaged in our children's lives, guiding them with good values through his own actions."[4] Shai Torjman, a friend for more than 20 years, writes that Shai "demonstrates commitment, responsibility, caring, and immense love for his children and wife. He's a role model father, nurturing and caring, always putting his family first, and supporting and helping with everything related to the home."[5] Shai's father-in-law, Azar Avikzer, writes that Shai "is a wonderful father to my grandchildren, an educator, caring, inclusive, loving . . . I couldn't wish my daughter a better husband."[6]

<u>Shai and his Family have Suffered Enormously</u>

Shai's wife, Shiran, works as an assistant kindergarten teacher, struggling to provide for her children on a monthly salary equivalent to about USD $1,100. She works until 2 pm, so she can care for her children after their school day. Their rent is almost USD $1,400, and their total monthly expenses are about USD $4,000. Shiran is also USD $180,000 in debt. Each of their three children attends a different school, and she must transport them back and forth. Shiran has become very depressed during the past few months, crying a lot and spending much of her time wrapped in a blanket in her bedroom. She explains, "I find myself in a complex situation, alone with three young children, unable to cover basic living expenses with my part-time job. Shai's incarceration has left me broken, and our children are also struggling emotionally."

---

[3] Letter from Adi Levy.
[4] Letter from Shiran Cohen.
[5] Letter from Shai Torjman.
[6] Letter from Azar Avikzer.

3

THE ALEPH INSTITUTE

While Shai awaits his fate in federal prison, his wife, Shiran, and three children are thousands of miles away, traumatized by the war. The environment in Israel has been fraught with terror ever since October 7, 2023, and compounding the widespread trauma felt throughout the region, Shiran and the children are without a husband and father. They live in the northern part of Israel, which is regularly subjected to barrages of rockets. They hear frequent sirens, directing them to run to seek safety in a shelter. This terrifies Shiran, and she freezes or screams, which scares her children. Her children are too young to fully understand what is happening, but they are affected by the atmosphere of fear, the constant sirens, and hours spent in a small bomb shelter.

<u>Shai's Family need him Now more than Ever</u>

Shai's mother, Shoshana, suffers from multiple health conditions, including COPD, Congestive Heart Failure, Acute Chronic Renal Failure, Hypertension, and Hyperkalemia. A year ago, Shoshana nearly died from COPD, and she is currently on oxygen. On another occasion, while Shai was traveling, she experienced a medical emergency, requiring that Shai cut his trip short to fly home immediately to care for her. Shoshana explains that Shai ensured that she attended all of her doctors' appointments, and that she ate regularly and took her medications.

Yosef, Shai's father, suffers from a variety of health issues, including Coronary Artery Disease, and he underwent a carotid endarterectomy on his carotid artery in July 2023. Yosef also suffers from Peripheral Vascular disease and Hypertension. When Yosef was in the hospital for several months following a stroke, Shai took care of everything that he needed. Yosef reports that Shai took great care of him, doing his grocery shopping when he was unable to leave the house, and inviting him over for Friday dinners.

The children have struggled emotionally since their father's arrest. Yali (age 9) has started bedwetting again, and has become aggressive and anxious. Lavi (age 7) has also regressed, and both children frequently express their frustration by screaming at their mother. They refuse to behave, wake up on time, or do their schoolwork. This is all new behavior, as before Shai's arrest, the children were well-behaved. Shiran's mother comes once a week to help her, but it's not enough.

Other family members and friends have observed the terrible toll Shai's separation from his family, particularly during these traumatic times, has taken on his wife and children. Shai's half-sister, Ilanit Betzalel, writes "I can testify that [Shai's] physical absence from their lives, with no ability to visit, puts them under stress and anxiety, leading to behaviors that are not typical for them."[7] Shai's sister, Shiri Lavi, explains,

---

[7] Letter from Ilanit Betzalel.

THE ALEPH INSTITUTE

> "Shai's wife and children are experiencing a harsh emotional and financial crisis because of his arrest and extradition afterwards to the United States. This crisis has recently exacerbated because of the atrocities that the State of Israel is undergoing since October 7th 2023 and which have left all the people of Israel in a state of helplessness without a personal or financial security, and in a state of uncertainty regarding their near and far future."[8]

Shai's mother-in-law, Shontal Avikzer, echoes this sentiment, "this story affects 3 young children so much and I'm afraid it's what will burn into their memory and affect their lives,"[9] and family friend Tzvi Avisar writes, "[Shai] and his family have already paid a heavy price. I sincerely hope that the U.S. court will find a meaningful way to alleviate the suffering of Shai Cohen and his family, who anxiously await his return home."[10]

Eti Yochai, Shai's sister-in-law, writes, "the current difficult times in Israel demand Shai to stand by his wife and children, who are deeply afraid and anxious. He is their anchor."[11] Given the tenuous and unsafe conditions in northern Israel, it is vitally important that Shai return home as soon as possible so he can relocate his family to a more secure location closer to Tel Aviv. Shai has already relocated his mother, Shoshana, on several occasions for her own safety, and it is Shai's own family that is now in jeopardy.

Conclusion

While Shai remains incarcerated, his wife and three young children live thousands of miles away in northern Israel, in constant fear and traumatized by the war enveloping the region. Shai and his family have suffered tremendously because of his absence, and they need him at home as they navigate this very difficult period.

For the foregoing reasons, we *respectfully recommend that the Court consider a sentence for Shai consisting of time served.*

---

[8] Letter from Shiri Lavi.
[9] Letter from Shontal Avikzer.
[10] Letter from Tzvi Avisar.
[11] Letter from Eti Yochai.

THE ALEPH INSTITUTE

I hope and pray that this submission will receive the consideration that will produce satisfactory results for society and for Shai.

With gratitude and prayerful wishes for all good.

Respectfully submitted,

/s/ Yossi Bryski

Rabbi Yossi Bryski
Director of Alternative Sentencing
The Aleph Institute

## APPENDIX:

## THE ALEPH INSTITUTE

## INTRODUCTION AND HISTORY

The Aleph Institute ("Aleph") is a 501(c)(3) non-profit organization committed to improving our criminal justice system so that it delivers sensible and fair justice for all stakeholders, and improves conditions of confinement and re-entry programs for those imprisoned. It assists the families of individuals facing punishment or serving sentences to deal with the many, often devastating collateral consequences of prosecution and imprisonment of a loved one, and supports members of the armed forces. Aleph's prevention program offers an array of educational opportunities designed to cultivate greater adherence to the law. By addressing the root causes of unlawful behavior, Aleph aims to inspire current and emerging generations to strive for higher standards, ethically and legally, and thus prevent collateral consequences before they even occur. Aleph also promotes the more widespread use of alternatives to incarceration in appropriate cases. Aleph supports individuals and families regardless of their religion or ethnicity, and provides all its services *pro bono*.

Aleph was created 42 years ago during a meeting between the late Honorable Jack Weinstein, U.S. District Judge for the Eastern District of New York, and Rabbi Sholom Lipskar, in Judge Weinstein's chambers. Rabbi Lipskar was inspired by The Lubavitcher Rebbe, Rabbi Menachem M. Schneerson, to create an organization that would work to change the sterile and often dehumanizing environment of prisons into environments of restoration, rehabilitation, and reformation. Similarly, Judge Weinstein understood that every person involved in the criminal justice system needs to be treated as an individual, a person, and not just a statistic.

Utilizing a spiritual focus, together with practical life skills and counseling, Aleph seeks to help individuals to recalibrate their lives, preparing them for effective reentry into society. Aleph's efforts during the past 42 years have served thousands of incarcerated individuals and their families, culminating in the reinforcement of strong family ties, and helping to facilitate a more successful transition back into the community. In Judge Weinstein's words, "[T]he Aleph Institute…understands and forces us to face the fact that each person deserves to be treated with respect as an individual personality and not as…a faceless number."[1]

Aleph has worked cooperatively and productively over the years with hundreds of current and former federal and state judges, prosecutors, probation officers, prison officials, and members of Congress from across the country – including former Attorneys General and Deputy Attorneys General, Bureau of Prisons directors, U.S. Attorneys, District Attorneys, and others. Aleph played an instrumental role in securing passage of the First Step Act of 2018, which brought about much-needed reforms to the federal criminal punishment system. Aleph has become a leading, credible voice in the ever-growing movement toward criminal justice reform

---

[1] Jack B. Weinstein, *Prison Need Not Be Mandatory: There Are Options Under the New U.S. Sentencing Guidelines*, 1 Judge J. 16, 28 (1989).

## ALEPH'S WORK IN ALTERNATIVE SENTENCING

*The Benefits of Alternatives to Incarceration*

The historical approach to sentencing, which uses incarceration as the default remedy for criminal conduct, has staggeringly high economic and societal costs. The United States spends nearly $300 billion annually to police communities and incarcerate 2.2 million people.[2] The societal costs of incarceration – lost earnings, adverse health effects, and the damage to the families of the incarcerated – are estimated at up to three times the direct costs, bringing the total burden of our criminal justice system to roughly $1.2 trillion each year.[3] Whenever a court sentences an individual, it is not a stretch to say that it sentences an entire family, and the children of incarcerated individuals will suffer a permanent scar. Specifically, research shows that children of incarcerated parents demonstrate maladaptive symptoms, including behavioral problems, difficulties at school, depression, and an increased risk of winding up in prison themselves.[4]

Our many years of experience have taught us that, in certain cases, the goals of the criminal justice system can be accomplished by measures other than incarceration. The historic mindset that incarceration should be the default approach to malfeasance is failing both society and the individual. The weight of the evidence suggests little or no correlation between longer prison sentences (more than ten years) and reduced recidivism; indeed, the National Institute of Justice has concluded that "long prison sentences do little to deter people from committing future crimes."[5] In fact, longer sentences may slightly *increase* recidivism when compared to shorter sentences.[6] The imposition of long sentences on a large scale "offers diminishing returns for public safety."[7]

Aleph has developed the view that custodial sentences should be reserved for individuals who have a history of violence, as well as for those individuals (including certain nonviolent offenders) who may otherwise pose a danger to society if allowed to remain at liberty. Rather than being strictly

---

[2] https://www.bjs.gov/index.cfm?ty=pbdetail&iid=6728, Table 1.

[3] https://joinnia.com/wp-content/uploads/2017/02/The-Economic-Burden-of-Incarceration-in- the-US-2016.pdf.

[4] https://www.publichealthpost.org/research/incarcerations-costs-for-families/

[5] William Fitzpatrick, a former President of the National District Attorneys' Association, April 26, 2016 letter to Senators Mitch McConnell and Harry Reid. *See also* Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 CRIME & JUST. 199, 201 (2013) ("There is little evidence that increases in the length of already long prison sentences yield general deterrent effects that are sufficiently large to justify their social and economic costs.")

[6] Roger Pryzybylski, John Maki, Stephanie Kennedy, Aaron Rosenthal and Ernesto Lopez, *The Impact of Long Sentences on Public Safety: a Complex Relationship* (November 2022), Council for Criminal Justice, Task Force on Long Sentences.

[7] *Id.*

punitive, criminal punishments should be designed to confer a benefit on the victims of the offense and society as a whole, and provide appropriate support and rehabilitative services to the defendant.[8] This sentencing philosophy is reflected in every case that Aleph accepts: Aleph's advocacy is deeply rooted in its conviction that incarceration should not be used absent a compelling need. We agree with William Fitzpatrick, the former President of the National District Attorneys' Association, who suggested that society "use prison for those we are afraid of, not those whom we are mad at based upon their behavior."[9]

*Aleph's Approach*

Aleph is among the very few non-profit organizations in the criminal justice arena that advocates not only for systemic changes but also directly on behalf of individuals facing criminal punishment. Aleph presents, to courts and prosecutors around the country, alternatives to incarceration for defendants who are selected by Aleph through a careful screening process. Aleph's Alternative Sentencing Department generally only advocates on behalf of individuals who are first-time offenders who have not committed a crime of violence. Aleph's alternative sentencing work is focused on individuals who have expressed clear and genuine remorse and a willingness to make amends for their conduct, and/or cases where there are compelling mitigating circumstances that justify a lower sentence. Aleph does not advocate for an alternative sentence in cases where it deems the individual to be a threat to public safety.

In addition to these requirements, Aleph makes an individualized assessment of the suitability of alternative sentencing, relying heavily on its vast experience compiled over four decades. Aleph has built a strong track record of credibility and success, in which many judges have imposed lower sentences based on one or more factors identified by Aleph in its written submissions and oral allocutions at sentencings. A recent review conducted by Covington & Burling LLP found that, in cases where Aleph made sentencing recommendations, sentencing judges relied on one or more factors identified by Aleph in imposing a sentence equal to or near to Aleph's recommendation in a majority of such cases.[10]

*Crafting an Alternative Sentencing Proposal*

Legal scholars, the United States Supreme Court, and the rabbis at Aleph have all observed that prison is often not conducive to "promoting correction and rehabilitation."[11] This is because rehabilitation is a "forward-looking" concept, promoting resocialization by emphasizing "personal

---

[8] Talmud Berachos 606b; Likutei Torah Nasso.

[9] William Fitzpatrick, a former President of the National District Attorneys' Association, April 26, 2016 letter to Senators Mitch McConnell and Harry Reid.

[10] In several cases, the sentencing judge *expressly* relied (in whole or in part) on Aleph's submission in determining the sentence.

[11] *Tapia v. United States*, 131 S. Ct. 2382, 2387 (2011); *see also* Benjamin L. Apt, *Do We Know How To Punish?* New Crim. L. Rev. 437, 460 (2016).

3

reform over punishment" and "illuminat[ing] the criminal's inner struggle,"[12] and as such only works when combined with an intense personal commitment to change. Though imprisonment may satisfy a thirst for retribution, the prison environment rarely inspires this commitment in the incarcerated individual. As Judge Richard Lowell Nygard once observed, "people – offenders included – change because they see something in themselves they do not like, and they reach down inside themselves and change it. Most criminal offenders who change for the better do so in spite of prison not because of it."[13]

Whereas prison may not promote rehabilitation, community-based programs like Aleph's proposals can be effective at restoring an individual's commitment to ethical behavior. Further, the same characteristics that may have made an individual such a source of strength for their own family and community will enhance the positive impact of their efforts for those with whom they interact under the terms of Aleph's proposal. We believe that individuals may best rehabilitate themselves through these efforts and that, in the process, they will push others to reach their full potential.

Aleph's sentencing proposals are designed to mete out appropriate, substantive punishment with the greatest benefit and lowest cost to society, while redirecting and enhancing an individual's value structure through social, therapeutic, and moral counseling and education. Every proposal Aleph submits carefully considers the traditional sentencing goals (retribution, rehabilitation, incapacitation, and deterrence), as well as the unique history and personal characteristics of each defendant, in an effort to provide effective correctional solutions. We typically advocate for sentences that include an alternative, non-custodial component – for example, community service, restorative justice, psychotherapy, or spiritual counseling. The non-custodial aspect of the sentence allows individuals to directly address the shortcomings that contributed to their offense, and also gives them an opportunity to use their sentence as a means to improve themselves and the world around them.

Aleph strives to craft alternative sentences that directly address the crime that brought an individual into the criminal justice system. An individual who serves the community that he or she has wronged, and employs his or her unique strengths to support those who need help, may have a truly redemptive and rehabilitative experience. For example, where appropriate, Aleph may recommend that individuals present "deterrence talks," whereby they share their personal experiences that led to their involvement in the criminal justice system, with other members of their community. In this way, the goals of both rehabilitation and deterrence are furthered: such individuals must directly and openly confront their wrongful conduct as a component of their rehabilitation, and others may be deterred from following a similar path. Selectively administered, such alternative sentences can provide individuals with an opportunity to improve themselves and the world around them, while also keeping them with their families and in their community, thereby limiting harmful collateral consequences.

---

[12] Benjamin L. Apt, *Do We Know How To Punish?* New Crim. L. Rev. 437, 458-60 (2016).

[13] Richard Lowell Nygaard, *Crime, Pain, and Punishment: A Skeptic's View*, 102 Dick. L. Rev. 355, 362-63 (1998).

*Taking a Leadership Role*

Motivated by this sentencing philosophy, Aleph endeavors to become a resource to those seeking to promote the more widespread use of alternative sentencing in appropriate cases, as well as the broader reform of the criminal justice system. In this role as advocate for a better approach to sentencing, we work to bring together thought leaders, judges, and prosecutors to improve the sentencing framework.

Aleph has sponsored and conducted [two summits](#) on sentencing and sentencing reform – one in 2016 at the Georgetown Law Center, entitled "[Alternative Sentencing Key Stakeholders](#)," and one in 2019 at Columbia Law School, entitled "[Rewriting the Sentence](#)." Both summits were attended by hundreds of criminal justice stakeholders, including federal and state judges, federal and state prosecutors, probation officers, private practitioners, academics, and others, from across the country. The [focus](#) of both summits was on bringing about a more enlightened and humane criminal justice system, in which individuals facing punishment are treated fairly and humanely, consistent with preserving the interests of their families, communities, victims, and society as a whole.

In October 2023, the Center for Justice and Human Dignity ("CJHD") (a 501(c)(3) non-profit organization that was incubated at and is supported by Aleph) will host another summit at George Washington University School of Law in Washington, DC, entitled "[Rewriting the Sentence II Summit on Alternatives to Incarceration](#)." This summit, which will build off Aleph's two prior summits, will serve as a dedicated forum where judges, prosecutors, and other decision-makers can come together to confront the complex challenges in addressing mass incarceration and its harmful consequences, including through the adoption of alternative sentencing programs and a reimagined approach to criminal justice. Together with CJHD, Aleph is also actively developing the Forum for Alternatives to Incarceration Resources, an online resource designed to provide a wealth of information and resources regarding alternative sentencing practices and implementation strategies throughout the United States.

## **SUPPORTIVE STATEMENTS ABOUT ALEPH**

Aleph has been publicly recognized numerous times for its outstanding contributions to improving the criminal justice system. The following is a selection of supportive statements about Aleph.

"The Aleph Institute is doing extraordinary fine work. Aleph helps in three ways. First, it explains to judges and the judicial system when and how alternatives to prison which protect the public are possible. Second, it helps those in prison develop their spiritual lives and maintain contact with their families and the world beyond their bars and barbed wire. Third, it assists those on the outside, particularly the children of prisoners, to retain their ties with prisoners. As a result of its good work, Aleph is widely known and respected by penal and judicial authorities."

> —**The Late Hon. Jack B. Weinstein,** Former Chief Judge of the U.S. District Court, Eastern District of New York.[14]

"For over 35 years Aleph has been championing and delivering justice to people who have been overlooked or forgotten by the rule of law, giving them hope, relief from suffering and the chance to improve their lives and fortunes. Both these individuals and the nation are the beneficiaries of Aleph's goodness and mission."

> — **Hon. Louis Freeh,** former U.S. District Judge, Southern District of New York, and former Director of the FBI, **[**at Aleph's 2016 ASKS Summit, Georgetown University Law Center.**]**

"While judging, in general, requires the application of law to the facts, sentencing requires more. It necessarily involves empathy and compassion, which Aleph surely brings to the table. At a time when sentencing principles are changing, Aleph's input is invaluable. It provides careful analysis of alternatives to incarceration entirely consistent with – and some may say better suited to – public safety. It provides a critical link between prisoners and their families and friends, making certain that prisoners – human beings – do not disappear behind the walls. Put simply, Aleph brings to bear its reservoirs of compassion and empathy, both before during and after punishment has been imposed, and has been doing so for 35 years."

> —**Hon. Nancy Gertner,** former U.S. District Judge, District of Massachusetts; Professor at Harvard Law School, **[**at Aleph's 2016 ASKS Summit, Georgetown University Law Center.**]**

"I think we are all in agreement this has been an extraordinary summit….35 years ago, a young Rabbi started some educational institutions, believing… that education was a fundamental right and goal of all people. He also had an interest—because of faith, belief and experience—that reforms could be made in the criminal justice system; to deal with defendants more humanely, to be aware of the impact on families, [and] the problem of reentry, and he started an institution to deal with these problems. Today we are the beneficiaries of that vision and that work."

> —**The Late Hon. Charles B. Renfrew,** U.S. Deputy Attorney General and U.S. District Judge, Northern District of California, **[**at Aleph's 2016 ASKS Summit, Georgetown University Law Center.**]**

"The Aleph Institute must be commended for its vision in bringing together at the ASKS Summit such diverse and interesting people and perspectives on the questions of criminal justice reform and sentencing alternatives in this era of mass incarceration."

> —**Hon. Judge Brooke Wells,** U.S. Magistrate Judge, District of Utah, at Aleph's 2016 ASKS Summit, Georgetown University Law Center.

---

[14] *Supra*, note 1.

"You at Aleph are doing extraordinary things on behalf of the judges in my court. We appreciate the work that you do."

>    —**Hon. Joy Flowers Conti,** Senior U.S. District Judge, Western District of Pennsylvania.

"Today judges and lawyers, prosecutors and law enforcement communities…are engaged in trying to make certain that our system is fair. It takes a collaborative partnership and that's why I am so glad that all of us are here committed to making certain our justice system is the best that it can be. And I thank [Aleph] for being here. And I thank you for your continued great work."

>    —**Hon. Bernice Donald,** former U.S. Circuit Judge for the Sixth Circuit.

"The many problems in our system cannot be addressed by simply building more prison beds. One of the keys of an effective Department of Corrections will be…great emphasis on alternatives to incarceration. Organizations such as the Aleph Institute will be key to any community-based programs."

>    —**The Late Hon. Lawton Chiles,** former Governor, Florida.

"[Criminal Justice reform] is hard work and even if we do it thoughtfully, and with the openness and humanity it requires, there will inevitably be setbacks and disappointments…But it is work that draws its sustenance from the divine spark in each of us. I commend Aleph for its decades of commitment, and for convening such an impressive group of people and organizations."

>    —**Hon. Jeremy Fogel,** former U.S. District Judge, Northern District of California, and former Director of the Federal Judicial Center, at Aleph's 2019 Rewriting the Sentence Summit, Columbia University Law School.

"Over the years, I have worked pro-bono on a number of matters with the Aleph Institute. The Institute's staff are incredibly dedicated, caring, smart, and hardworking. The Institute provides invaluable assistance to people from all walks of life and helps them find the justice they deserve with the compassion they need."

>    —**Larry Thompson,** former U.S. Deputy Attorney General and former U.S. Attorney, Northern District of Georgia.